FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 29, 2020

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

ADAM B.,[1]

           Plaintiff,

  vs.

ANDREW M. SAUL,
COMMISSIONER OF SOCIAL
SECURITY,

          Defendant.

No. 4:19-cv-05227-MKD

ORDER DENYING PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT AND GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

ECF Nos. 16, 20

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 16, 20. The parties consented to proceed before a magistrate judge. ECF No. 5. The Court, having reviewed the administrative record and the parties' briefing,

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names. *See* LCivR 5.2(c).

ORDER - 1

is fully informed.  For the reasons discussed below, the Court denies Plaintiff's

motion, ECF No. 16, and grants Defendant's motion, ECF No. 20.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social

Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

limited; the Commissioner's decision will be disturbed "only if it is not supported

by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153,

1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a

reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159

(quotation and citation omitted).  Stated differently, substantial evidence equates to

"more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and

citation omitted).  In determining whether the standard has been satisfied, a

reviewing court must consider the entire record as a whole rather than searching

for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its

judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152,

1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one

rational interpretation, [the court] must uphold the ALJ's findings if they are

ORDER - 2

supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674

F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an

ALJ's decision on account of an error that is harmless." *Id.*  An error is harmless

"where it is inconsequential to the [ALJ's] ultimate nondisability determination."

*Id.* at 1115 (quotation and citation omitted).  The party appealing the ALJ's

decision generally bears the burden of establishing that it was harmed.  *Shinseki v.*

*Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within

the meaning of the Social Security Act.  First, the claimant must be "unable to

engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve

months."  42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment must be

"of such severity that he is not only unable to do his previous work[,] but cannot,

considering his age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy."  42 U.S.C. §

1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to

determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §

ORDER - 3

416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  *Id.*

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess

ORDER - 4

1  the claimant's "residual functional capacity."  Residual functional capacity (RFC),

2  defined generally as the claimant's ability to perform physical and mental work

3  activities on a sustained basis despite his or her limitations, 20 C.F.R. §

4  416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

5  At step four, the Commissioner considers whether, in view of the claimant's

6  RFC, the claimant is capable of performing work that he or she has performed in

7  the past (past relevant work).  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant is

8  capable of performing past relevant work, the Commissioner must find that the

9  claimant is not disabled.  20 C.F.R. § 416.920(f).  If the claimant is incapable of

10  performing such work, the analysis proceeds to step five.

11  At step five, the Commissioner considers whether, in view of the claimant's

12  RFC, the claimant is capable of performing other work in the national economy.

13  20 C.F.R. § 416.920(a)(4)(v).  In making this determination, the Commissioner

14  must also consider vocational factors such as the claimant's age, education and

15  past work experience.  *Id.*  If the claimant is capable of adjusting to other work, the

16  Commissioner must find that the claimant is not disabled.  20 C.F.R. §

17  416.920(g)(1).  If the claimant is not capable of adjusting to other work, analysis

18  concludes with a finding that the claimant is disabled and is therefore entitled to

19  benefits.  *Id.*

20

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

**ALJ'S FINDINGS**

On October 29, 2015, Plaintiff applied for Title XVI supplemental security income benefits alleging a disability onset date of January 1, 2014. Tr. 115.  The application was denied initially, and on reconsideration. Tr. 146-49; Tr. 153-59.  Plaintiff appeared before an administrative law judge (ALJ) on April 12, 2018.  Tr. 39-114.  On June 18, 2018, the ALJ denied Plaintiff's claim.  Tr. 14-38.

At step one of the sequential evaluation process, the ALJ found Plaintiff has not engaged in substantial gainful activity since October 29, 2015. Tr. 19.  At step two, the ALJ found that Plaintiff has the following severe impairments:  right acromioclavicular joint osteoarthritis, seizure disorder, migraines, obesity, major depressive disorder, anxiety disorder, and posttraumatic stress disorder (PTSD).  *Id.*

At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed

impairment.  Tr. 20-22.  The ALJ then concluded that Plaintiff has the RFC to

perform light work with the following limitations:

> [Plaintiff] cannot climb ladders, ropes, or scaffolds and can only
> occasionally perform all other postural activities; he can occasionally
> reach overhead with the righter upper extremity; he can have no
> exposure to hazards such as moving mechanical parts and unprotected
> heights; he cannot have concentrated exposure to extreme cold or
> heat, or to vibration; he can tolerate only moderate noise; he can have
> no exposure to sunlight, flashing lights, or other bright lights without
> protection, such as a hat, visor or sunglasses; he is limited to simple,
> routine work with a reasoning level of 2 or less; he needs a routine,
> predictable work environment with no more than occasional changes;
> he can have no contact with the public and only occasional, superficial
> contact with supervisors and coworkers; and he cannot work at an
> assembly line pace or do other fast-paced work.

Tr. 22.

At step four, the ALJ found Plaintiff has no past relevant work.  Tr. 31.  At

step five, the ALJ found that, considering Plaintiff's age, education, work

experience, RFC, and testimony from the vocational expert, there were jobs that

existed in significant numbers in the national economy that Plaintiff could perform,

such as garment sorter, garment folder, and cleaner, housekeeping.  Tr. 32.

Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the

Social Security Act, from the date of the application through the date of the

decision.  *Id.*

ORDER - 7

On July 15, 2019, the Appeals Council denied review of the ALJ's decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review.  *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him supplemental security income benefits under Title XVI of the Social Security Act.  Plaintiff raises the following issues for review:

1.  Whether the ALJ properly evaluated the medical opinion evidence;

2.  Whether the ALJ conducted a proper step-three analysis;

3.  Whether the ALJ properly evaluated lay witness evidence;

4.  Whether the ALJ properly evaluated Plaintiff's symptom claims; and

5.  Whether the ALJ conducted a proper step-five analysis.

ECF No. 16 at 7.

## DISCUSSION

### A. Medical Opinion Evidence

Plaintiff contends the ALJ improperly weighed the opinions of treating physician Hazel Gavino, M.D., examining psychologist CeCilia Cooper, Ph.D., and non-examining medical expert Marian Martin, Ph.D.  ECF No. 16 at 9-14.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant

ORDER - 8

1  (examining physicians); and (3) those who neither examine nor treat the claimant

2  [but who review the claimant's file] (nonexamining [or reviewing] physicians)."

3  *Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted).

4  Generally, a treating physician's opinion carries more weight than an examining

5  physician's opinion, and an examining physician's opinion carries more weight

6  than a reviewing physician's opinion. *Id.* at 1202. "In addition, the regulations

7  give more weight to opinions that are explained than to those that are not, and to

8  the opinions of specialists concerning matters relating to their specialty over that of

9  nonspecialists." *Id.* (citations omitted).

10  If a treating or examining physician's opinion is uncontradicted, the ALJ

11  may reject it only by offering "clear and convincing reasons that are supported by

12  substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

13  "However, the ALJ need not accept the opinion of any physician, including a

14  treating physician, if that opinion is brief, conclusory, and inadequately supported

15  by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228

16  (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or

17  examining doctor's opinion is contradicted by another doctor's opinion, an ALJ

18  may only reject it by providing specific and legitimate reasons that are supported

19  by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater,* 81

20  F.3d 821, 830-31 (9th Cir. 1996)). The opinion of a nonexamining physician may

ORDER - 9

1  serve as substantial evidence if it is supported by other independent evidence in the

2  record.  *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

3      *1.  Dr. Gavino*

4      Dr. Gavino rendered two opinions on Plaintiff's functioning.  In July 2016,

5  she diagnosed Plaintiff with seizure disorder, migraines, gastroesophageal reflux

6  disease, generalized anxiety disorder, left shoulder pain, and back pain.  Tr. 584.

7  She opined Plaintiff's conditions limit his ability to engage in work-related

8  activities, he is unable to lift heavy objects, reach above, concentrate for extended

9  periods of time, interact with people, be exposed to chemicals or synthetic

10  materials, drive, work in elevated area, and climb; he should not engage in work-

11  related activities more than one to 10 hours per week; he can engage only in

12  sedentary activities; and he has impaired ability to access services because he

13  cannot drive nor consistently make/keep appointments.  Tr. 584-85.  In September

14  2017, she diagnosed Plaintiff with the same conditions, and opined he had the

15  same limitations, with the addition of limitations in his ability to work in water,

16  complete job applications, and interact with others.  Tr. 595-96.  The ALJ gave Dr.

17  Gavino's opinions little weight.  Tr. 29.  As Dr. Gavino's opinion is contradicted

18  by Dr. Jahnke's opinion, Tr. 58-59, the ALJ was required to give specific and

19  legitimate reasons, supported by substantial evidence, to reject the opinions. *See*

20  *Bayliss*, 427 F.3d at 1216.

ORDER - 10

1    First, the ALJ found Dr. Gavino's opinions were inconsistent with the

2    objective evidence.  Tr. 29.  A medical opinion may be rejected if it is unsupported

3    by medical findings.  *Bray*, 554 F.3d at 1228; *Batson v. Comm'r of Soc. Sec.*

4    *Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Thomas v. Barnhart*, 278 F.3d 947,

5    957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001);

6    *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992).  An ALJ may discredit

7    physicians' opinions that are unsupported by the record as a whole.  *Batson*, 359

8    F.3d at 1195.  Moreover, an ALJ is not obliged to credit medical opinions that are

9    unsupported by the medical source's own data and/or contradicted by the opinions

10   of other examining medical sources.  *Tommasetti v. Astrue*, 533 F.3d 1035, 1041

11   (9th Cir. 2008).

12   The ALJ noted the medical records reflect generally normal neurological

13   findings, some indications of limited right range of motion but full strength in the

14   right upper extremity, and generally normal mental status exams.  Tr. 29 (citing Tr.

15   470-81, 484-94, 535-52, 603-809).  Plaintiff sets forth his own interpretation of the

16   medical evidence, arguing the opinions are consistent with the evidence.  ECF No.

17   16 at 2-5.  However, the ALJ's interpretation of the evidence is reasonable.  While

18   Plaintiff has reported seizures, he has never been observed having a seizure by a

19   medical professional nor has he had neurological deficits on exam.  Tr. 27.

20   Plaintiff had a normal EEG in January 2016 and after an abnormal EEG in April

ORDER - 11

2016, Plaintiff did not follow up with further recommended diagnostics nor did he go to the emergency department when it was recommended. *Id.*, Tr. 528, 532-34. Plaintiff was generally observed as being in no to mild pain. Tr. 27 (citing Tr. 743-809). At the psychological consultative exam, Plaintiff's orientation, remote memory, immediate memory, concentration, attention, and judgment were all unimpaired, while his abstract reasoning and short-term memory were impaired. Tr. 486-87. The ALJ reasonably found Dr. Gavino's opinions were inconsistent with the objective evidence. This was a specific and legitimate reason, supported by substantial evidence, to reject the opinions.

Second, the ALJ found Dr. Gavino's opinions were inconsistent with Plaintiff's limited treatment for his migraines. Tr. 29. An ALJ may discredit a claimant's symptom complaints if the claimant fails to show good reason for failing to follow treatment recommendations. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). However, the fact that a claimant fails to pursue treatment is not directly relevant to the weight of a medical provider's opinion. *See* 20 C.F.R. § 416.927(c). However, the consistency of a medical opinion with the record as a whole is a relevant factor in evaluating a medical opinion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).

ORDER - 12

1    Plaintiff alleges he experiences "severe migraines" that can last up to two

2    weeks.  Tr. 268-69.  He reported that his migraines cause him to have to stay in a

3    dark room for multiple days.  Tr. 270.  However, after an increase in Topamax in

4    April 2016, Plaintiff did not return for follow-up.  Tr. 549.  Though Plaintiff

5    reported experiencing migraines as early as when he was a teenager, he reported no

6    treatment at that time.  Tr. 484.  The ALJ noted elsewhere in the decision that

7    Plaintiff also had periods where he did not follow-up on care for his reported

8    seizures.  Tr. 29.  Plaintiff was scheduled for testing due to his reported headaches

9    and spells of loss of consciousness, however he cancelled an appointment

10   scheduled for a video EEG.  Tr. 549.  Plaintiff was instructed to complete the

11   testing and labs ordered, because his provider could not continue to treat him

12   without further information and could not support Plaintiff's application for

13   disability benefits without a clear diagnosis for his seizures/spells.  Tr. 550.

14   Despite being instructed to go to the emergency department if he had more than

15   two seizures in a 24-hour period, Plaintiff testified he has had as many as three to

16   four seizures "back to back" but never went to an emergency department.  Tr. 539,

17   549.  The ALJ reasonably found Plaintiff did not seek the level of care expected

18   for the disabling-level of reported symptoms.  The ALJ gave specific and

19   legitimate reasons, supported by substantial evidence, to reject Dr. Gavino's

20   opinions.

ORDER - 13

1

2. *Dr. Cooper*

2       Dr. Cooper performed a psychological consultative exam in March 2016 and

3    diagnosed Plaintiff with PTSD, somatic symptom disorder, specific learning

4    disorder with impairment in reading, unspecified attention-deficit/hyperactivity

5    disorder, bereavement, and history of migraine headaches.  Tr. 492.  Dr. Cooper

6    opined Plaintiff can understand, remember, and carryout instructions involving two

7    or three steps; he would do tasks slowly; he can maintain attention/concentration

8    on tasks he enjoys; he would have difficulty maintaining appropriate interactions

9    with supervisors/coworkers because of mistrust; he would have some difficulty

10   responding appropriately to change; he would require accommodation to address

11   anxiety and to facilitate retrieval of new information in a timely manner; he would

12   usually respond appropriately to normal hazards; his appearance would be

13   acceptable in casual settings; he is capable of handling funds with some oversight

14   from his spouse; and his prognosis is guarded.  Tr. 492-93.  The ALJ gave Dr.

15   Cooper's opinion generally great weight but gave little weight to the opinion that

16   Plaintiff needs an accommodation.  Tr. 30.  As Dr. Cooper's opinion is

17   contradicted by the opinion of Dr. Robert Henry, Tr. 141-43, the ALJ was required

18   to give specific and legitimate reasons, supported by substantial evidence, to reject

19   Dr. Cooper's opinion.  *See Bayliss*, 427 F.3d at 1216.

20

ORDER - 14

The ALJ rejected Dr. Cooper's opinion that Plaintiff would require accommodation to address anxiety and to facilitate retrieval of new information in a timely manner, because Dr. Cooper did not define the limitation in work-related terms. Tr. 29. An ALJ may reject an opinion that does "not show how [a claimant's] symptoms translate into specific functional deficits which preclude work activity." *See Morgan v. Comm'r, Soc. Sec. Admin,* 169 F.3d 595, 601 (9th Cir. 1999). While Dr. Cooper opined Plaintiff needed "accommodation," she did not explain what the accommodation would be, such as what would be needed to address Plaintiff's anxiety. This was a specific and legitimate reason, supported by substantial evidence, to reject Dr. Cooper's opinion.

Plaintiff argues the ALJ erred by rejecting Dr. Cooper's opinion that Plaintiff would have difficulty maintaining appropriate interactions with supervisors and coworkers because of mistrust. ECF No. 16 at 12. However, the ALJ limited Plaintiff to "no contact with the public and only occasional, superficial contact with supervisors and coworkers." Tr. 22. An ALJ need not provide reasons for rejecting a physician's opinion where the ALJ incorporated them into the RFC. *Turner v. Comm'r, Soc. Sec. Admin.*, 613 F.3d 1217, 1223 (9th Cir. 2010). As such, the ALJ did not err as he incorporated Dr. Cooper's opinion into the RFC.

1      Plaintiff contends Dr. Cooper's opinion was more restrictive, because the

2 vocational expert testified that two altercations per month with a coworker

3 precludes competitive employment.  ECF No. 16 at 12 (citing Tr. 113).  However,

4 Dr. Cooper did not opine Plaintiff would have two or more altercations with

5 coworkers in a month.  The ALJ reasonably interpreted Dr. Cooper's opinion and

6 accounted for the opinion in the RFC.

7     *3. Dr. Martin*

8      Dr. Martin testified at Plaintiff's hearing and diagnosed Plaintiff with

9 depressive disorder not otherwise specified, generalized anxiety disorder, somatic

10 syndrome disorder, and PTSD.  Tr. 69-71.  Dr. Martin noted that there were

11 inconsistencies in Plaintiff's report regarding his alcohol use.  Tr. 67-68.  Dr.

12 Martin testified Plaintiff's scores on the Wechsler Adult Intelligence Scale and

13 Wechsler Memory Scale were in the "borderline" range, indicating some

14 difficulties in processing speed, digital memory function and verbal

15 comprehension, but stated the scores could be impacted by Plaintiff's other

16 conditions, or may be due to an underlying neurocognitive disorder.  Tr. 71-72.

17 Dr. Martin testified a full neuropsychological screening would be necessary to

18 know clearly if Plaintiff has an underlying neurocognitive disorder.  Tr. 72-73.  Dr.

19 Martin further testified Plaintiff has moderate limitations in understanding,

20 remembering or applying information; moderate to marked limitations in

ORDER - 16

interacting with others; marked limitations in concentrating, persisting, and maintaining pace; and moderate limitations in adapting and managing one's self.[2] Tr. 74-76. Dr. Martin testified, "I suspect that if there weren't any alcohol use, that [adapt and manage one's self] would go to marked." Tr. 76. In follow-up questions, the ALJ asked Dr. Martin if there was objective evidence in the record of the limitations Dr. Martin set forth, or if his opinion was based primarily on Plaintiff's self-report in the record. Tr. 77-78. Dr. Martin stated most of the record indicated Plaintiff was observed as behaving appropriately, and abnormal behavior occurred during periods Plaintiff was using alcohol. Tr. 78-79. Dr. Martin testified that based on the objective evidence, Plaintiff has a moderate limitation in interacting with others and concentrating, persisting, and maintaining pace.[3] Tr. 79-80. The ALJ found Dr. Martin's later opinion was consistent with the available evidence. Tr. 30. The ALJ did not address Dr. Martin's earlier opinion. As Dr. Martin's opinion is contradicted by the opinion of Dr. Henry, Tr. 141-43, the ALJ was required to give specific and legitimate reasons, supported by substantial evidence, to reject Dr. Martin's opinion. *See Bayliss*, 427 F.3d at 1216.

---

[2] The Court refers to this portion of Dr. Martin's statement as his "earlier opinion."

[3] The Court refers to this portion of Dr. Martin's statement as his "later opinion."

ORDER - 17

1    The ALJ found Dr. Martin's later opinion was consistent with the evidence,

2    thereby finding Dr. Martin's earlier opinion was inconsistent with the evidence.

3    Tr. 30.  A medical opinion may be rejected if it is unsupported by medical

4    findings.  *Bray*, 554 F.3d at 1228; *Batson*, 359 F.3d at 1195; *Thomas*, 278 F.3d at

5    957; *Tonapetyan*, 242 F.3d at 1149; *Matney*, 981 F.2d at 1019.  An ALJ may

6    discredit physicians' opinions that are unsupported by the record as a whole.

7    *Batson*, 359 F.3d at 1195.  Moreover, an ALJ is not obliged to credit medical

8    opinions that are unsupported by the medical source's own data and/or

9    contradicted by the opinions of other examining medical sources.  *Tommasetti*, 533

10   F.3d at 1041.

11       The ALJ reasonably found Dr. Martin's later opinion was more consistent

12   with the record as a whole, including the testing and clinical observations.  Tr. 30.

13   Plaintiff was observed as having a fair or euthymic mood and adequate grooming,

14   he was noted on occasion as "somewhat anxious," and appeared to have average

15   intelligence.  Tr. 471, 477, 479.  When Plaintiff was noted as anxious and

16   depressed, he still engaged well in the session, and did not have any other

17   abnormal noted clinical impressions.  Tr. 603, 606.  The counseling records

18   generally contain minimal objective evidence and the mental status examinations

19   in record are generally normal.  Tr. 609, 612.  At the psychological consultative

20   examination, Plaintiff had a normal appearance, was cooperative, smiled though he

ORDER - 18

appeared to have some anxiety, he had normal orientation, concentration, judgment, stream of activity and communication, normal remote memory and immediate memory with a "somewhat impaired" short-term memory, a little below average fund of knowledge, and impaired abstract reasoning.  Tr. 486-87.  The ALJ reasonably found the objective evidence is more consistent with a finding that Plaintiff has no more than moderate limitations than a finding Plaintiff has any marked limitations.  Tr. 28.

Plaintiff argues the ALJ erred in asking Dr. Martin to ignore Plaintiff's self-reports and to base his opinion on the objective evidence.  ECF No. 16 at 13. Plaintiff argues Dr. Martin properly considered the record as a whole in his earlier opinion, and that opinion is the proper opinion to credit.  *Id.*  However, evidence that a claimant exaggerated his symptoms is a specific and legitimate reason to reject a doctor's conclusions.  *See Thomas,* 278 F.3d at 958.  An ALJ may consider the consistency of an individual's own statements made in connection with the disability-review process with any other existing statements or conduct.  *Smolen*, 80 F.3d at 1284.  Further, an ALJ may reject a medical source's opinion as based on unreliable self-reports only when the medical source relied "more heavily" "on a patient's self-reports than on clinical observations."  *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014).

ORDER - 19

1    The ALJ found that there is indication Plaintiff is motivated by secondary

2    gain and that his symptom complaints were less than credible.  Tr. 28.  At multiple

3    appointments, Plaintiff brought up his application for benefits, and stopped seeing

4    a provider who stated she could not support his application for benefits.  *Id.* (citing

5    Tr. 550); Tr. 544, 548.  Plaintiff's symptom complaints made in connection with

6    his application for benefits are more severe than what is reflected in the other

7    evidence.  Tr. 27-28.

8    At the hearing, after Dr. Martin provided the earlier opinion on Plaintiff's

9    functioning, when considering both Plaintiff's self-report and the objective

10   evidence, the ALJ asked if there was objective evidence to support Plaintiff's self-

11   reported difficulties interacting with others or concentrating.  Tr. 77.  Dr. Martin

12   testified there was not objective evidence of such difficulties.  *Id.*  Dr. Martin also

13   noted that when Plaintiff was observed as having abnormal behavior, it was in the

14   context of using alcohol.  Tr. 77-78.  Dr. Martin stated he questioned the extent to

15   which Plaintiff's statements could be relied upon, particularly Plaintiff's

16   conflicting reports of when he ceased alcohol use.  Tr. 79.  Given the unreliability

17   of Plaintiff's statements, Dr. Martin provided the later opinion based only on the

18   objective evidence.  As the ALJ gave clear and convincing reasons to reject

19   Plaintiff's symptom complaints, as discussed *infra,* the ALJ reasonably rejected

20

Dr. Martin's earlier opinion as it was based too heavily on Plaintiff's properly

discredited self-report.

Next, Plaintiff argues the ALJ erred in rejecting Dr. Martin's opinion that

Plaintiff needs a neuropsychological examination. ECF No. 16 at 13-14. Plaintiff

argues the ALJ had a duty to develop the record by ordering a neuropsychological

examination. *Id.* The ALJ has an independent duty to fully and fairly develop a

record in order to make a fair determination as to disability, even where, as here,

the claimant is represented by counsel. *Celaya v. Halter*, 332 F.3d 1177, 1183 (9th

Cir. 2003); *see also Tonapetyan*, 242 F.3d at 1150; *Crane v. Shalala*, 76 F.3d 251,

255 (9th Cir. 1996). "Ambiguous evidence, or the ALJ's own finding that the

record is inadequate to allow for proper evaluation of the evidence, triggers the

ALJ's duty to 'conduct an appropriate inquiry.'" *See Tonapetyan*, 242 F.3d at

1150 (quoting *Smolen*, 80 F.3d at 1288). Further, "an ALJ is not required to order

every medical evaluation that could conceivably shed light on a claimant's

condition, but rather just those that would resolve ambiguities or inadequacies in

the record." *Lloyd v. Astrue*, No. C-11-4902-EMC, 2013 WL 503389, at *5 (N.D.

Cal. Feb. 8, 2013) (*citing Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir.

2001)). Plaintiff's disagreement with the ALJ's conclusions does not make the

record ambiguous or inadequate. *See Leitner v. Comm'r Soc. Sec.*, 361 F. App'x

876, 877 (9th Cir. 2010) (the "claimant bears the burden" of establishing that

symptoms interfere with his or her ability to "perform basic work activities," and the ALJ, on that record, could make such a determination) (citations omitted).

First, the Court notes Plaintiff already received a psychological evaluation that went beyond the standard psychological consultative examination and included neuropsychological testing. Tr. 484-93. Plaintiff's evaluation included a mental status examination, Trails testing, Weschler Memory Scales testing and Weschler Adult Intelligence Scale (WAIS) testing.[4] Tr. 484-92. While Dr. Martin stated Plaintiff would need "full" neuropsychological testing or a neuropsychological "screening" to determine if he has an underlying

---

[4] Trails A and B tests are neuropsychological tests of visual attention and task switching. *See Clover v. Berryhill,* 2018 WL 783809, at *2 (N.D. Cal. Feb. 7, 2018); *see also Sharee R. v. Berryhill*, No. 3:17-CV-06055-DWC, 2018 WL 4927620, at *3 (W.D. Wash. Oct. 11, 2018). WAIS is also a test administered as a part of neuropsychological consultative examinations rather than psychological examinations. *See, e.g., Esser v. Colvin*, No. 3:15-CV-01939-MA, 2016 WL 5746353, at *3 (D. Or. Oct. 3, 2016).

ORDER - 22

neurocognitive disorder,  Tr. 72-73, he did not specify what additional testing was necessary.

Second, Dr. Martin also noted there was conflicting evidence as to whether Plaintiff has a neurocognitive disorder.  Tr. 73.  While Plaintiff had some borderline test results, his MRI and other test results were not consistent with the borderline test scores.  Tr. 73-74.  Given Dr. Martin's statements, it is unclear if he believed further neuropsychological testing was needed, and if so, what testing was necessary that was not already performed.

The ALJ did not find there was a need to further develop the record. Plaintiff sets forth no arguments that there were ambiguities in the evidence nor that the record was inadequate for the ALJ to make a decision.  Plaintiff only argues further neuropsychological testing was necessary as Dr. Martin stated it may be needed.  ECF No. 16 at 13-14.  However, the ALJ had almost 500 pages of treatment records, a psychological examination that already included some neuropsychological testing, the testimony of a medical expert, and Plaintiff's statements.  Dr. Martin's statements regarding whether further neuropsychological testing was needed did not trigger the ALJ's duty to develop the record, when the ALJ relied on ample evidence in making his determination.  Plaintiff is not entitled to remand on these grounds.

**B. Step-Three**

Plaintiff contends that the ALJ erred by finding that Plaintiff's impairments did not meet or equal Listings 11.02, 12.02, 12.04, 12.06, or 12.15. ECF No. 16 at 14-16. At step three, the ALJ must determine if a claimant's impairments meet or equal a listed impairment. 20 C.F.R. § 416.920(a)(4)(iii). The Listing of Impairments "describes each of the major body systems impairments [which are considered] severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education or work experience." 20 C.F.R. § 416.925. "Listed impairments are purposefully set at a high level of severity because 'the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary.' " *Kennedy v. Colvin*, 758 F.3d 1172, 1176 (9th Cir. 2013) (citing *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990)). "Listed impairments set such strict standards because they automatically end the five-step inquiry, before residual functional capacity is even considered." *Kennedy*, 758 F.3d at 1176. If a claimant meets the listed criteria for disability, he will be found to be disabled. 20 C.F.R. § 416.920(a)(4)(iii).

"To *meet* a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim." *Tackett,* 180 F.3d at 1099 (emphasis in original); 20 C.F.R. § 416.925(d). "To *equal* a listed impairment, a claimant must establish symptoms, signs and laboratory

findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment . . . ." *Tackett*, 180 F.3d at 1099 (emphasis in original) (quoting 20 C.F.R. § 404.1526(a)); 20 C.F.R. § 416.926(a).  "If a claimant suffers from multiple impairments and none of them individually meets or equals a listed impairment, the collective symptoms, signs and laboratory findings of all of the claimant's impairments will be evaluated to determine whether they meet or equal the characteristics of any relevant listed impairment." *Tackett*, 180 F.3d at 1099. However, " '[m]edical equivalence must be based on medical findings," and "[a] generalized assertion of functional problems is not enough to establish disability at step three.' " *Id*. at 1100 (quoting 20 C.F.R. § 404.1526(a)); 20 C.F.R. § 416.926(a).

The claimant bears the burden of establishing his impairment (or combination of impairments) meets or equals the criteria of a listed impairments. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).  "An adjudicator's articulation of the reason(s) why the individual is or is not disabled at a later step in the sequential evaluation process will provide rationale that is sufficient for a subsequent reviewer or court to determine the basis for the finding about medical equivalence at step 3."  Social Security Ruling (SSR) 17-2P, 2017 WL 3928306, at *4 (effective March 27, 2017).

ORDER - 25

Here, the ALJ found that Plaintiff's impairments and combinations of impairments did not meet or equal any listings, including Listing 11.02, 12.04, 12.06 and 12.15.  Tr. 20-22.  Listing 11.02 requires the claimant experience a particular frequency of seizures despite adherence to prescribed treatment.  20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 11.02.  The claimant must have either: generalized tonic-clonic seizures occurring at least once a month for at least three consecutive months; dyscognitive seizures occurring at least one a week for at least three consecutive months; generalized tonic-clonic seizures occurring at least once every two months for at least four consecutive months, or dyscognitive seizures occurring at least once every two weeks for at least three consecutive months, and a marked limitation in physical functioning, understanding/remembering/applying information, interacting with others, concentrating/persisting/maintaining pace, or adapting/managing oneself.  *Id.*  While Listing 11.02 addresses seizures, it is the most closely analogous listing for migraines.  POMS DI 24505.015(B)(7)(b); HALLEX DI 24505.015(B)(7)(B) (example 2); *Daphne C. v. Comm'r of Soc. Sec.,* No. 2:17-CV-01593-TLF, 2018 WL 5919687, at *13 (W.D. Wash. Nov. 13, 2018).

### 1. Seizures

Plaintiff contends his seizure disorder meets Listing 11.02 because he has generalized tonic-clonic seizures "numerous times every week," even during periods he was compliant with treatment, which is corroborated by Plaintiff's

ORDER - 26

record of his seizure episodes.  ECF No. 16 at 15.  Listing 11.02 states generalized

tonic-clonic seizures are those in which the individual loses consciousness,

followed with a tonic phase (sudden muscle tension) and then a clonic phase

(convulsions).  20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 11.00 (H)(1)(a).  There

must be at least one detailed description of the individual's seizures, preferably

from a medical professional, who has observed each type of seizure.  20 C.F.R. Pt.

404, Subpt. P, App. 1, 11.00 (H)(2).  Multiple seizures in a day count as only one

seizure, and seizures during periods of non-compliance are not considered for

determining if the listing is met.  20 C.F.R. Pt. 404, Subpt. P, App. 1, 11.00 (H)(3).

Plaintiff testified he has seizures "maybe three, four times a week

sometimes."  Tr. 94-95.  He stated, "if I get one one day, I usually have maybe

three or four seizures back to back.  And then the rest of the week, I'm just laid up

in bad, can't move, sore."  Tr. 95.  This testimony indicates all three to four

seizures occur in a single day, with no further seizures in a typical week.  Under

the listing, Plaintiff's seizures would only count as a single seizure per week.

Plaintiff's reported frequency of seizures satisfies the criteria in Listing

11.02, however the ALJ found Plaintiff's reports unreliable.  Tr. 28.  Plaintiff

testified he stopped drinking in July 2016, Tr. 44, however, the medical records

indicate Plaintiff was drinking alcohol in December 2016.  Tr. 28 (citing Tr. 614).

Plaintiff's wife stated Plaintiff's seizures occur more frequently when he is

drinking alcohol.  Tr. 528.  Further, while Plaintiff reports he was compliant with treatment, the medical records demonstrate periods of non-compliance and lack of follow-up on care.  Plaintiff did not follow-up on testing for his seizures and did not seek treatment from a neurologist for his seizures after October 2016.  Tr. 25 (citing Tr. 548, 767).  Plaintiff was off his anti-epileptic medications for a period of time and received a refill after going to the emergency department in January 2017.  Tr. 31 (citing Tr. 707).  Plaintiff was not seen for any care for his seizures after January 2017.  Tr. 28.  Despite a reported increase in seizure activity, Plaintiff did not seek care in April 2017.  Tr. 25 (citing Tr. 758).  The ALJ reasonably found Plaintiff's reported frequency of seizures and compliance with care is inconsistent with the objective evidence and lack of care.

Plaintiff's seizures have also never been witnessed by any medical professional.  While Plaintiff has presented for care after he reported having a seizure, Tr. 692, medical providers have not seen Plaintiff actively seizing and there are no reports that describe Plaintiff's seizures in detail, as required by the listing.  Plaintiff's wife wrote a description of the seizures, but the description does not state Plaintiff loses consciousness, which is a requirement for tonic-clonic seizures under the listing.  Tr. 325-26, 328.  As there is no description of tonic-clonic seizures in the record, and there is a lack of evidence to support Plaintiff's

ORDER - 28

reported frequency of seizures, Plaintiff has not met his burden in demonstrating he meets Listing 11.02.

### 2. Migraines

Plaintiff also contends the ALJ erred in his analysis of whether Plaintiff's migraines meet or equal a listing because the ALJ did not make any specific factual findings regarding his migraines. ECF No. 16 at 14. The ALJ found there were no medical opinions that indicated Plaintiff's migraines were equal in severity to a listing. Tr. 21. The ALJ did not otherwise analyze Plaintiff's migraines or consider if Plaintiff's migraines equal Listing 11.02. However, any error in the ALJ's analysis is harmless because the Plaintiff has not met his burden of demonstrating his migraines equal Listing 11.02. *See Molina,* 674 F.3d at 1115.

Plaintiff testified he has migraines twice per month. Tr. 96. However, as discussed *supra,* Plaintiff has not sought any treatment for his reported neurological symptoms since January 2017 and he did not follow-up on recommended care. Plaintiff's wife described Plaintiff's seizures but did not offer a description of his migraines. Tr. 325-26, 328. There are no reports of any medical providers who witnessed Plaintiff's migraines. Plaintiff offers no argument as to how his migraines are equal to Listing 11.02. As such, Plaintiff has not met his burden in demonstrating his migraines equal Listing 11.02.

**C. Lay Witness Evidence**

Plaintiff challenges the ALJ's consideration of the lay witness statement of Plaintiff's wife, Cierra Carter-Barela.  ECF No. 16 at 16-17.  An ALJ must consider the statement of lay witnesses in determining whether a claimant is disabled.  *Stout v. Comm'r of Soc. Sec. Admin*., 454 F.3d 1050, 1053 (9th Cir. 2006).  Lay witness evidence cannot establish the existence of medically determinable impairments, but lay witness evidence is "competent evidence" as to "how an impairment affects [a claimant's] ability to work."  *Id*.; 20 C.F.R. § 416.913; *see also Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993) ("[F]riends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to her condition.").  If a lay witness statement is rejected, the ALJ "'must give reasons that are germane to each witness.'"  *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citing *Dodrill*, 12 F.3d at 919).

Ms. Carter-Barela submitted a statement that includes a list of Plaintiff's seizures she reportedly witnessed between January 2018 and March 2018, which indicates Plaintiff had multiple seizures each week.  Tr. 327-28.  Ms. Carter-Barela stated Plaintiff's seizures cause him to tense up and fall to the ground, sometimes injuring himself, and he then seizes.  Tr. 325, 328.  After he seizes, he mumbles and needs assistance moving and recovering.  *Id.*

1    The ALJ found Ms. Carter-Barela's statements regarding the frequency of

2 Plaintiff's seizures is inconsistent with the medical evidence.  Tr. 31.  "An ALJ

3 may reject lay testimony if it is *inconsistent* with medical evidence, but not if it is

4 simply *unsupported* by medical evidence."  *Carlos L. v. Berryhill*, No. ED CV 17-

5 122-SP, 2019 WL 1433723, at *11 (C.D. Cal. March 28, 2019) (emphasis in

6 original); *compare Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) ("One reason

7 for which an ALJ may discount lay testimony is that it conflicts with medical

8 evidence.") *and Bayliss*, 427 F.3d at 1218 ("Inconsistency with medical evidence

9 is one [germane] reason [to discredit the testimony of lay witnesses].") *with Bruce

10 v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009) ("Nor under our law could the ALJ

11 discredit her lay testimony as not supported by medical evidence in the record.")

12 *and Diedrich v. Berryhill*, 874 F.3d a634, 640 (9th Cir. 2017) ("[A] lack of support

13 from the 'overall medical evidence' is also not a proper basis for disregarding [the

14 lay witness'] observations") (internal citation omitted).

15    The ALJ found Plaintiff's lack of any treatment for his seizures after January

16 2017 was inconsistent with Ms. Carter-Barela's report that Plaintiff had seizures

17 every week.  Tr. 31.  Plaintiff argues he sought treatment in April for 2017 for his

18 seizures and thus the ALJ erroneously rejected Ms. Carter-Barela's statement.

19 ECF No. 16 at 17 (citing Tr. 758-59).  However, Plaintiff did not seek care for his

20 seizures in April 2017.  Rather, he sought care for knee pain, during which he

ORDER - 31

1   stated he had been experiencing seizures.  Tr. 757.  Plaintiff stated he was

2   supposed to see a neurologist but had not.  *Id.*  Plaintiff reported he was going to

3   go to the emergency department because he was out of his seizure medication.  *Id.*

4   There is no evidence Plaintiff was seen in an emergency department in April 2017,

5   that he saw the neurologist, nor that he sought any care for his seizures during the

6   time period from 2017 onward.  As such, the ALJ gave a germane reason to reject

7   Ms. Carter-Barela's statements.  Plaintiff is not entitled to remand on these

8   grounds.

9      **D. Plaintiff's Symptom Claims**

10          Plaintiff faults the ALJ for failing to rely on clear and convincing reasons in

11   discrediting his symptom claims.  ECF No. 16 at 17-20.  An ALJ engages in a two-

12   step analysis to determine whether to discount a claimant's testimony regarding

13   subjective symptoms.  SSR 16–3p, 2016 WL 1119029, at *2.  "First, the ALJ must

14   determine whether there is objective medical evidence of an underlying

15   impairment which could reasonably be expected to produce the pain or other

16   symptoms alleged."  *Molina*, 674 F.3d at 1112 (quotation marks omitted).  "The

17   claimant is not required to show that [the claimant's] impairment could reasonably

18   be expected to cause the severity of the symptom [the claimant] has alleged; [the

19   claimant] need only show that it could reasonably have caused some degree of the

20   symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

1    Second, "[i]f the claimant meets the first test and there is no evidence of

2    malingering, the ALJ can only reject the claimant's testimony about the severity of

3    the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

4    rejection." *Ghanim*, 763 F.3d at 1163 (citations omitted).  General findings are

5    insufficient; rather, the ALJ must identify what symptom claims are being

6    discounted and what evidence undermines these claims.  *Id*. (quoting *Lester*, 81

7    F.3d at 834; *Thomas*, 278 F.3d at 958 (requiring the ALJ to sufficiently explain

8    why it discounted claimant's symptom claims)).  "The clear and convincing

9    [evidence] standard is the most demanding required in Social Security cases."

10   *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r*

11   *of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

12       Factors to be considered in evaluating the intensity, persistence, and limiting

13   effects of a claimant's symptoms include: 1) daily activities; 2) the location,

14   duration, frequency, and intensity of pain or other symptoms; 3) factors that

15   precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and

16   side effects of any medication an individual takes or has taken to alleviate pain or

17   other symptoms; 5) treatment, other than medication, an individual receives or has

18   received for relief of pain or other symptoms; 6) any measures other than treatment

19   an individual uses or has used to relieve pain or other symptoms; and 7) any other

20   factors concerning an individual's functional limitations and restrictions due to

ORDER - 33

pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §

416.929 (c).  The ALJ is instructed to "consider all of the evidence in an

individual's record," "to determine how symptoms limit ability to perform work-

related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that Plaintiff's medically determinable impairments could

reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's

statements concerning the intensity, persistence, and limiting effects of his

symptoms were not entirely consistent with the evidence.  Tr. 24.

*1.  Objective Medical Evidence*

The ALJ found Plaintiff's symptom claims are inconsistent with the

objective evidence.  Tr. 24-27.  An ALJ may not discredit a claimant's symptom

testimony and deny benefits solely because the degree of the symptoms alleged is

not supported by objective medical evidence.  *Rollins v. Massanari*, 261 F.3d 853,

857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991);

*Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989); *Burch*, 400 F.3d at 680.

However, the objective medical evidence is a relevant factor, along with the

medical source's information about the claimant's pain or other symptoms, in

determining the severity of a claimant's symptoms and their disabling effects.

*Rollins*, 261 F.3d at 857; 20 C.F.R. § 416.929(c)(2).  Mental status examinations

ORDER - 34

are objective measures of an individual's mental health. *Buck v. Berryhill*, 869

F.3d 1040, 1049 (9th Cir. 2017).

First, the ALJ noted the objective evidence is inconsistent with Plaintiff's

allegations of disabling migraines and seizures. Tr. 24. In January 2016, Plaintiff

reported "infrequent" episodes where he lost consciousness. Tr. 24 (citing Tr.

466). However, he had not sought treatment for his reported migraines or loss of

consciousness since July 2015. Tr. 24 (citing Tr. 467). Despite his symptom

complaints, Plaintiff had a normal neurological examination. Tr. 24 (citing Tr.

469). In April 2016, Plaintiff reported increasing episodes of losing consciousness,

but reported his symptoms increased when he drank alcohol, and he again had a

normal neurological exam. Tr. 24 (citing Tr. 528, 530). An EEG showed no

seizure activity but sharp wave activity in the left temporal area, while an MRI

showed stable left parietal encephalomalacia but no acute findings. Tr. 24 (citing

Tr. 530-31, 533-34). Plaintiff presented to the emergency department after having

seizures, in the context of consuming a large amount of alcohol and having been

off of his anti-epileptic medications for two weeks. Tr. 25 (citing Tr. 671, 676).

While in the hospital, Plaintiff did not have any further seizures, and had a

negative EEG. Tr. 25 (citing Tr. 671). Despite complaints of ongoing seizures,

Plaintiff did not complete the home video EEG nor the laboratory testing his

provider ordered. Tr. 25 (citing Tr. 548-49). He continued to have normal

ORDER - 35

neurological findings at multiple examinations.  Tr. 25 (citing Tr. 538, 541, 544, 548-49).  Plaintiff did not seek treatment for his seizures or migraines from January 2017 forward.  Tr. 25.

Second, the ALJ found Plaintiff's complaints of limitations due to his shoulder impairment were inconsistent with the evidence.  Tr. 25-26.  Despite allegations of ongoing limitations, Plaintiff reported his medications relieved 90 percent of his pain and he reported he had the ability to perform his daily activities.  Tr. 26 (citing Tr. 743).  Plaintiff had abnormal range of motion and x-ray findings, but after attending an initial physical therapy evaluation for his shoulder, he failed to ever attend the scheduled physical therapy appointments.  Tr. 25-26 (citing Tr. 706, 726-27, 771).

Third, the ALJ found Plaintiff's reported mental health limitations were inconsistent with the objective evidence.  Tr. 26-27.  Plaintiff's mental status examinations contain generally normal findings, with intermittent abnormal findings.  Tr. 27 (citing Tr. 413, 470-77, 487, 607-09, 635-36, 638).  Plaintiff had several periods where he reported improvement in his symptoms and stopped seeking mental health treatment.  Tr. 27 (citing Tr. 612, 623).  On this record, the ALJ reasonably concluded that the objective medical evidence is not consistent with Plaintiff's complaints of disabling symptoms.  This finding is supported by

1  substantial evidence and was a clear and convincing reason, coupled with the other

2  reasons offered, to discount Plaintiff's symptoms complaints.

3      *2.  Activities of Daily Living*

4      The ALJ found Plaintiff's activities of daily living are inconsistent with

5  Plaintiff's symptom claims.  Tr. 28.  The ALJ may consider a claimant's activities

6  that undermine reported symptoms.  *Rollins*, 261 F.3d at 857.  If a claimant can

7  spend a substantial part of the day engaged in pursuits involving the performance

8  of exertional or non-exertional functions, the ALJ may find these activities

9  inconsistent with the reported disabling symptoms.  *Fair*, 885 F.2d at 603; *Molina*,

10  674 F.3d at 1113.  "While a claimant need not vegetate in a dark room in order to

11  be eligible for benefits, the ALJ may discount a claimant's symptom claims when

12  the claimant reports participation in everyday activities indicating capacities that

13  are transferable to a work setting" or when activities "contradict claims of a totally

14  debilitating impairment."  *Molina*, 674 F.3d at 1112-13.  The ability to care for

15  others without help has been considered an activity that may undermine claims of

16  totally disabling pain.  *Rollins,* 261 F.3d at 857.  However, if the care activities are

17  to serve as a basis for the ALJ to discredit the Plaintiff's symptom claims, the

18  record must identify the nature, scope, and duration of the care involved and this

19  care must be "hands on" rather than a "one-off" care activity.  *Trevizo v. Berryhill*,

20  871 F.3d 664, 675-76 (9th Cir. 2017).

The ALJ noted Plaintiff prepares meals, does laundry, shops in stores, goes out alone, manages finances, and helps get his kids to and from school.  Tr. 28 (citing Tr. 270-77, 487-88).  Plaintiff reported he gets his son ready for school, cooks "a lot of stuff" for his family, vacuums, does dishes, performs yard work though it is hard, spends two hours shopping during which he walks, though he sometimes needs to take a break to sit, helps his daughter with schoolwork, and goes for walks.  Tr. 272, 487-88.  While Plaintiff testified his wife performs 90 percent of the household activities, Tr. 91, he also testified his wife is physically disabled and receiving Social Security benefits, Tr. 92.  The ALJ reasonably found these two reports irreconcilable and concluded Plaintiff likely performs more activities than he reported at the hearing.  Tr. 28.  While Plaintiff argues his "modest" activities are consistent with his allegations, ECF No. 16 at 19, the ALJ reasonably found Plaintiff's reported activities are inconsistent with his claims of disabling limitations.  This finding is supported by substantial evidence and was a clear and convincing reason to discount Plaintiff's symptoms complaints.

### 3. Inconsistent Statements

The ALJ found Plaintiff made inconsistent statements about his symptoms and his alcohol use, and the record demonstrated Plaintiff was motivated by secondary gain.  Tr. 28.  In evaluating a claimant's symptom claims, an ALJ may consider the consistency of an individual's own statements made in connection

1  with the disability-review process with any other existing statements or conduct

2  under other circumstances. *Smolen*, 80 F.3d at 1284 (The ALJ may consider

3  "ordinary techniques of credibility evaluation," such as reputation for lying, prior

4  inconsistent statements concerning symptoms, and other testimony that "appears

5  less than candid."). Moreover, evidence that the claimant was motivated by

6  secondary gain is sufficient to support an ALJ's rejection of testimony. *Matney ex*

7  *rel. Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992). Therefore, the

8  tendency to exaggerate or engage in manipulative conduct during the

9  administrative process is a permissible reason to discount the credibility of the

10  claimant's reported symptoms. *Tonapetyan*, 242 F.3d at 1148.

11  First, the ALJ found Plaintiff made inconsistent statements about his alcohol

12  use. Tr. 28. Plaintiff testified he stopped drinking in July 2016, Tr. 44, however,

13  the medical records indicate Plaintiff was drinking alcohol in December 2016. Tr.

14  28 (citing Tr. 614). The ALJ found Plaintiff's inaccurate reporting of his alcohol

15  use detracted from the reliability of his testimony regarding of his seizures, given

16  the interaction between Plaintiff's alcohol use and seizures. Tr. 28. The ALJ also

17  noted Plaintiff's inconsistent reports regarding his activities of daily living. *Id.*

18  Second, the ALJ noted there is evidence of secondary gain motivation in the

19  record. Tr. 28. At multiple appointments, Plaintiff brought up his application for

20  benefits, and stopped seeing a provider who stated she could not support his

ORDER - 39

1  application for benefits.  *Id.* (citing Tr. 550); Tr. 544, 548.  Plaintiff's symptom

2  complaints in connection with his application for benefits are more severe than

3  what is reflected in the evidence.  Tr. 27-28.  On this record, the ALJ reasonably

4  concluded that Plaintiff's inconsistent statements and secondary gain motivation

5  detracted from his symptom claims.  This finding is supported by substantial

6  evidence and was a clear and convincing reason to discount Plaintiff's symptoms

7  complaints.

8      *4. Treatment Non-Compliance*

9      The ALJ found Plaintiff's treatment non-compliance is inconsistent with his

10  symptom claims.  Tr. 28.  "[I]n order to get benefits, an individual must follow

11  treatment prescribed by his or her physician if the treatment can restore the ability

12  to work, unless the individual has an acceptable reason for failing to follow the

13  prescribed treatment."  *Orn v. Astrue*, 495 F.3d 625, 636-37 (9th Cir. 2007).  "A

14  claimant's subjective symptom testimony may be undermined by an unexplained,

15  or inadequately explained, failure to . . . follow a prescribed course of treatment."

16  *Trevizo*, 871 F.3d at 679 (citations omitted).  Social Security Ruling 16-3p instructs

17  that an ALJ "will not find an individual's symptoms inconsistent with the evidence

18  in the record on this basis without considering possible reasons he or she may not

19  comply with treatment or seek treatment consistent with the degree of his or her

20  complaints."  SSR 16-3p, 2016 WL 1119029, at *8.  Acceptable reasons for failing

ORDER - 40

1    to follow prescribed treatment include the treatment being contrary to the

2    claimant's religion, the fact that similar treatment has been tried in the past with

3    unsuccessful results, the recommended treatment being of great magnitude or

4    unusual nature, or that the treatment would involve amputation of an extremity.  20

5    C.F.R. § 416.930.

6         As discussed *supra,* the ALJ noted Plaintiff's provider ordered laboratory

7    testing and a home video EEG, neither of which Plaintiff followed-up on.  Tr. 25

8    (citing Tr. 548-49).  Despite his ongoing complaints of seizures and migraines,

9    Plaintiff did not seek treatment from a neurologist after October 2016 nor

10   emergency care for his seizure or migraine symptoms after January 2017.  Tr. 28.

11   Plaintiff argues he had valid reasons for not pursuing treatment, including an

12   inability to travel to Seattle to see a specialist.  ECF No. 16 at 18-19.  However,

13   Plaintiff offers no reason as to why he did not seek local treatment after January

14   2017 for his reported symptoms.  Further, although ongoing physical therapy was

15   recommended for Plaintiff's shoulder, Plaintiff was non-compliant with the

16   attendance policy and failed to show for five appointments.  Tr. 26.  Additionally,

17   although Plaintiff was advised to stop drinking alcohol, records indicate he had

18   continued alcohol use and aberrant drug behavior.  Tr. 24, 28 (citing Tr. 532,

19   671,787).  On this record, the ALJ reasonably concluded that Plaintiff's non-

20   compliance with treatment was inconsistent with his symptom claims.  This

ORDER - 41

1   finding is supported by substantial evidence and was a clear and convincing reason

2   to discount Plaintiff's symptoms complaints.

3       *5. Work History*

4       The ALJ found Plaintiff's weak work history undermines his symptoms

5   claims.  Tr. 28.  Evidence of a poor work history that suggests a claimant is not

6   motivated to work is a permissible reason to discredit a claimant's testimony that

7   she is unable to work.  *Thomas*, 278 F.3d at 959; SSR 96–7 (factors to consider in

8   evaluating credibility include "prior work record and efforts to work"); *Smolen*, 80

9   F.3d at 1284; 20 C.F.R. § 416.929 (work record can be considered in assessing

10  credibility).

11      The ALJ found Plaintiff's lack of a work history suggests there is an

12  explanation for his ongoing unemployment other than Plaintiff's alleged

13  limitations due to his conditions.  Tr. 28.  While Plaintiff reported he had never

14  worked, he stated he believed he became unable to work January 1, 2014.  Tr. 252.

15  However, prior to January 2014, Plaintiff's earning records demonstrate that he

16  had five years where he did not work, and six years where he worked but never

17  earned more than $6,300 in a year.  Tr. 242.  Given Plaintiff's lack of substantial

18  gainful activity for the years preceding his alleged onset date, the ALJ reasonably

19  found Plaintiff's work history detracted from his allegations that his conditions are

20  the reason he has not worked.  This finding is supported by substantial evidence

ORDER - 42

and was a clear and convincing reason to discount Plaintiff's symptoms

complaints.  Plaintiff is not entitled to remand on these grounds.

**E. Step-Five**

Plaintiff argues the ALJ erred at step five by failing to account for Plaintiff's

limitations in the RFC.  ECF No. 16 at 20-21.  At step five of the sequential

evaluation analysis, the burden shifts to the Commissioner to establish that 1) the

claimant can perform other work, and 2) such work "exists in significant numbers

in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran*, 700 F.3d at 389.  In

assessing whether there is work available, the ALJ must rely on complete

hypotheticals posed to a vocational expert.  *Nguyen*, 100 F.3d at 1467.  The ALJ's

hypothetical must be based on medical assumptions supported by substantial

evidence in the record that reflects all of the claimant's limitations.  *Osenbrook v.*

*Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001).  The hypothetical should be "accurate,

detailed, and supported by the medical record."  *Tackett*, 180 F.3d at 1101.

The hypothetical that ultimately serves as the basis for the ALJ's

determination, i.e., the hypothetical that is predicated on the ALJ's final RFC

assessment, must account for all the limitations and restrictions of the claimant.

*Bray*, 554 F.3d at 1228.  As discussed above, the ALJ's RFC need only include

those limitations found credible and supported by substantial evidence.  *Bayliss*,

427 F.3d at 1217 ("The hypothetical that the ALJ posed to the VE contained all of

ORDER - 43

1   the limitations that the ALJ found credible and supported by substantial evidence

2   in the record."). "If an ALJ's hypothetical does not reflect all of the claimant's

3   limitations, then the expert's testimony has no evidentiary value to support a

4   finding that the claimant can perform jobs in the national economy." *Id*. However,

5   the ALJ "is free to accept or reject restrictions in a hypothetical question that are

6   not supported by substantial evidence." *Greger v. Barnhart*, 464 F.3d 968, 973

7   (9th Cir. 2006). Therefore, the ALJ is not bound to accept as true the restrictions

8   presented in a hypothetical question propounded by a claimant's counsel if they are

9   not supported by substantial evidence. *Magallanes v. Bowen*, 881 F.2d 747, 756-

10  57 (9th Cir. 1989); *Martinez v. Heckler*, 807 F.2d 771, 773 (9th Cir. 1986). A

11  claimant fails to establish that a step five determination is flawed by simply

12  restating argument that the ALJ improperly discounted certain evidence, when the

13  record demonstrates the evidence was properly rejected. *Stubbs-Danielson v.*

14  *Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008).

15          Plaintiff contends the ALJ's step five findings were based on an improper

16  RFC formulation and that the Plaintiff 's RFC should have included Plaintiff being

17  absent more than one day per month on an ongoing basis, being off-task and

18  unproductive more than 10 percent of the time, and persistent and ongoing issues

19  with becoming verbally aggressive or getting upset and leaving the work station.

20  ECF No. 16 at 20. Based on this premise, Plaintiff argues he should have been

ORDER - 44

found disabled at step five of the sequential evaluation. *Id.* at 21. However, Plaintiff's argument is based entirely on the assumption that the ALJ erred in considering the medical opinion evidence and Plaintiff's symptom claims. *Id.* at 20-21. For reasons discussed throughout this decision, the ALJ's discounting of Plaintiff's symptom complaints and consideration of the medical opinion evidence are legally sufficient and supported by substantial evidence. Thus, the ALJ did not err in finding Plaintiff capable of performing other work in the national economy based on the hypothetical containing Plaintiff's RFC. Plaintiff is not entitled to remand on these grounds.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 16**, is **DENIED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 20**, is **GRANTED**.

3. The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

ORDER - 45

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED April 29, 2020.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 46